COUNTY OF WESTCHESTER, Plaintiff, *v.* WILLIAM RANOLLO, Defendant.

City Court of New Rochelle, November 8, 1946.

*George M. Fanelli, District Attorney,* for plaintiff.

*Oscar Schachter, Legal Counsellor, United Nations,* for defendant.

RUBIN, J. The defendant, as the operator of a motor vehicle, is charged with having violated the provisions of the ordinances of the Westchester County Park Commission, in that he did on the 17th day of October, 1946, on the Hutchinson River Parkway, a public highway in this city, operate said vehicle, for a distance greater than a quarter of a mile, at a rate of speed of fifty miles per hour, the legal limit being forty miles. Appearing through counsel, the defendant answers that he was operating said motor vehicle at the time and place complained of as an employee of the United Nations, and, in fact, he was accompanied in the vehicle at the time by the Hon. Trygve Lie. Secretary General of the United Nations, and by virtue of these facts he urges that he is immune from prosecution in this court or, for that matter, in any court.

The claim for immunity rests upon Executive Order No. 9698 (U. S. Code, Congressional Service, 1946, p. 5.21), promulgated by the President of the United States, February 19, 1946, by virtue of the authority vested in the President by section 1 of the International Organizations Immunities Act approved December 29, 1945, otherwise known as Public Law 291, 79th Congress (U. S. Code, tit. 22, § 288 *et seq.*). That statute was enacted and designed to implement the immunities provisions as embodied in the Charter of the United Nations.

By the provisions of article 105 of chapter XVI of the United Nations Charter the signatories, including the United States, covenanted and agreed: "1. The Organization shall enjoy in the territory of each of its Members *such privileges and immunities as are necessary for the fulfillment of its purposes.*

"2. Representatives of the Members of the United Nations and officials of the Organization shall similarly enjoy *such privileges and immunities as are necessary for the independent*

*exercise of their functions in connection with the Organization."*
(Italics supplied.)

It is to be noted significantly at this point that the phrase, " such privileges and immunities " is nowhere defined in the charter.

The Congressional Act provides, among other things, that " the privileges, exemptions and immunities provided for " therein may be accorded, withheld, withdrawn, conditioned or limited by Executive Order of the President (§ 1).

By section 7 of the Act (U. S. Code, tit. 22, § 288d, subd. [b]) the national policy on the subject of immunity is laid down in the following words: " (b) Representatives of foreign governments in or to international organizations and officers and employees of such organizations shall be immune from suit and legal process relating to acts performed by them in their official capacity and falling within their functions as such representatives, officers, or employees except insofar as such immunity may be waived by the foreign government or international organization concerned."

One examines the statute in vain for any definition of the term " legal process " or of the term " in their official capacity and falling within their functions as such representatives, officers, or employees ".

Again when we turn to Executive Order No. 9698, there is a declaration by the President that the United Nations are " entitled to enjoy the privileges, exemptions, and immunities conferred by the said International Organizations Immunities Act ", without any attempt to further define or limit or prescribe the extent of the immunities so conferred.

It is urged in behalf of the defendant that the application of these cited provisions requires the exemption from prosecution or suit, criminal or civil, and without regard to the degree of the offense committed, of all personnel accredited to the United Nations as an international organization, without regard to the question as to whether the one so involved is the Secretary General himself or an accredited delegate to the organization's deliberations, or the humblest servant attached to the personnel of the organization, and without regard to the importance or unimportance of the functions of the particular individual defendant in the deliberations and workings of the organization so long as the defendant, at the time of the commission of the offense or the incurring of the liability, be acting in his official capacity. This court is not prepared to accede to that view.

In the absence of statutory definitions, the question presented must be treated under the general rules of construction applicable to criminal proceedings in this State. Section 21 of the Penal Law very aptly furnishes the rule of construction in the following language: "The rule that a penal statute is to be strictly construed does not apply to this chapter or any of the provisions thereof, but all such provisions must be construed according to the fair import of their terms, *to promote justice and effect the objects of the law.*" (Italics supplied.)

To recognize the existence of a general and unrestricted immunity from suit or prosecution on the part of the personnel of the United Nations, so long as the individual be performing in his official capacity, even though the individual's function has no relation to the importance or the success of the organization's deliberations, is carrying the principle of immunity completely out of bounds. To establish such a principle would in effect create a large preferred class within our borders who would be immune to punishment on identical facts for which the average American would be subject to punishment. Any such theory does violence to and is repugnant to the American sense of fairness and justice and flouts the very basic principle of the United Nations itself, which in its preamble to its charter affirms that it is created to give substance to the principle that the rights of all men and women are equal.

Furthermore, the establishment of such a rule of immunity would far exceed any effort heretofore undertaken in the intercourse between nations to recognize the principle of diplomatic immunity, for ambassadors and foreign ministers and members of their households, accredited to a specific nation and enjoying immunity from prosecution here under the provisions of section 25 of the Penal Law, at least, theoretically, were subject to return to their own country for trial and punishment. The United Nations has no tribunal for the trial and punishment of offenders among its personnel, and if blanket immunity were to be recognized as prevailing in this case then one would have to come to the conclusion that such an offender could escape trial and punishment completely. Certainly no court of justice, and no people who believe in justice, would be prepared to endorse such a position.

It is interesting to note that research discloses a similar attempt to escape punishment by one Avenol in the courts of the Republic of France in 1934, when he was being held to account for alleged failure to support his family, he then being the Secretary General of the ill-fated predecessor to the present international organization, namely, the League of Nations. The

judgment in that instance refused to accord the claimed immunity, with the comment, "No one may claim to be immune from suit in 50 states. That is practically in all the world. Such a privilege would be abhorrent to the fundamental idea of justice."

There can be no disputing of the proposition that if these international legislative bodies are to function properly within the borders of the particular nation that may be housing their activities, a certain amount of immunity, exemption and privilege is necessary to insure their necessary personnel against harassment by way of court proceedings, civil or criminal, and every right-thinking American citizen is sincerely anxious that the deliberations of this international body shall proceed uninterruptedly and with a maximum measure of success in everyone's interest.

This assurance can be given by interpreting the language of the charter and the act of Congress and the Presidential Executive Order as being limited in the application of the principle of immunity to those personnel whose activities are such as to be necessary to the actual execution of the purposes and deliberations of the United Nations as distinguished from those household servants and personnel who merely serve the personal comfort, convenience or luxury of the delegates and Secretariat who actually perform the true functions of the organization. It is only by the application of such a rule that one can be said to be interpreting the law "according to the fair import of its terms, to promote justice and effect the objects of the law."

Our State and national legislators enjoy a measure of immunity so as to insure the proper functioning of the Congress and of the State Legislatures, which falls short of that measure of immunity contended for on behalf of the personnel of the United Nations, and no valid reason exists why the immunity to be accorded to the United Nations should be greater in scope than that found necessary to insure the proper functioning of our own Congress.

It is only by a proper definition of the immunity to be accorded to the personnel of the United Nations and by a proper circumscription of the effect to be given the Congressional language that the American people can be assured that the hospitality accorded the United Nations on American soil will not be abused by conduct on the part of even the humblest member of its personnel in a manner that is hostile to the American concept of the equal administration of justice among our people. This court feels strongly that the question of immunity under

these circumstances should be entrusted not to the whim or caprice of any individual or committee that might speak for the United Nations Organization, but rather that such immunity should be available only when it is truly necessary to assure the proper deliberations of the organization — a circumstance that could be readily brought about if the granting of immunity were restricted to those cases where our own State Department certified that the exemption from prosecution or suit was in the public interest.

In the light of the foregoing citations and principles, this court holds that upon the facts in this case, the defendant is not entitled to immunity as a matter of law without a trial of the issue of fact, and is accordingly required to plead to the information before the court.